[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Bishop,* Slip Opinion No. 2018-Ohio-5132.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-5132

THE STATE OF OHIO, APPELLANT, *v.* BISHOP, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Bishop,* Slip Opinion No. 2018-Ohio-5132.]

*Criminal law—Plea hearings—Crim.R. 11(C)(2)(A)—A trial court must advise a criminal defendant on postrelease control for a prior felony, during plea hearing in a new felony case, of trial court's authority under R.C. 2929.141 to terminate defendant's existing postrelease control and to impose a consecutive prison sentence for postrelease-control violation—Defendant-appellee need not show prejudice because trial court completely failed to inform him that he could receive a consecutive prison sentence under R.C. 2929.141(A)—Court of appeals' judgment vacating guilty plea and remanding cause affirmed.*

(Nos. 2017-1715 and 2017-1716—Submitted July 18, 2018—Decided December 21, 2018.)

APPEAL from and CERTIFIED by the Court of Appeals for Montgomery County, No. 27496, 2017-Ohio-8332.

_____

**FRENCH, J.**

{¶ 1} We are asked to resolve a certified conflict between judgments of the Second District Court of Appeals and the Fifth and Eighth District Courts of Appeals on the following question: "[w]hether a criminal defendant on [postrelease control] for a prior felony must be advised, during his plea hearing in a new felony case, of the trial court's ability under R.C. 2929.141 to terminate his existing [postrelease control] and to impose a consecutive prison sentence for the [postrelease-control] violation." 152 Ohio St.3d 1404, 2018-Ohio-723, 92 N.E.3d 877. We conclude that Crim.R. 11(C)(2)(a) requires that advisement. We answer the certified question in the affirmative and affirm the judgment of the Second District Court of Appeals.

## I. Facts and Procedural History

{¶ 2} While on postrelease control for a prior felony conviction, appellee, Dustin Bishop, was indicted on one count of possession of heroin, a fifth-degree felony, and one count of possession of drug paraphernalia, a misdemeanor.

{¶ 3} Bishop pleaded guilty to the possession count, and the state dismissed the drug-paraphernalia count. At Bishop's plea hearing, the trial court informed Bishop that the court could place him on postrelease control for the possession offense. It also informed him that if he committed a new felony while on that postrelease control, the court could sentence him to serve one year in prison or the time remaining on his postrelease control, whichever was longer. The trial court did not inform Bishop that once he pleaded guilty to the possession offense, the court would have the authority under R.C. 2929.141 to terminate Bishop's existing postrelease control and impose a prison term that he would serve consecutively to the term of imprisonment imposed for the possession offense. The trial court accepted Bishop's guilty plea and set the matter for sentencing.

**{¶ 4}** The trial court sentenced Bishop to serve a nine-month term of imprisonment for the possession offense. For the postrelease-control violation, the court ordered Bishop to serve a one-year prison term under R.C. 2929.141 consecutively to the sentence for the possession offense.

**{¶ 5}** Bishop appealed to the Second District Court of Appeals, raising two assignments of error. Bishop first argued that he had not knowingly, intelligently, and voluntarily pleaded guilty to the possession offense because the trial court had not informed him of its authority under R.C. 2929.141 to terminate his postrelease control and to order him to serve a prison term consecutively to any term of imprisonment imposed for the felony offense to which he was pleading guilty. The appellate court, relying on its prior decisions in *State v. Branham*, 2d Dist. Clark No. 2013 CA 49, 2014-Ohio-5067, and *State v. Landgraf*, 2d Dist. Clark No. 2014 CA 12, 2014-Ohio-5448, sustained Bishop's first assignment of error and concluded that the trial court erred by failing to advise Bishop, at the time of his plea, that he could have to serve an additional, consecutive sentence for his current postrelease-control violation. 2017-Ohio-8332, ¶ 7. The appellate court deemed Bishop's second assignment of error moot, reversed the trial court's judgment, vacated Bishop's guilty plea, and remanded the matter for further proceedings. *Id.* at ¶ 8-9.

**{¶ 6}** The appellate court, upon the state's motion, certified that its decision conflicted with the Fifth District Court of Appeals' decision in *State v. Hicks*, 5th Dist. Delaware No. 09CAA090088, 2010-Ohio-2985, and the Eighth District Court of Appeals' decision in *State v. Dotson*, 8th Dist. Cuyahoga No. 101911, 2015-Ohio-2392. The state filed a notice of certified conflict and a jurisdictional appeal in this court. We determined that a conflict exists and consolidated the conflict case with the state's jurisdictional appeal. 152 Ohio St.3d 1404, 2018-Ohio-723, 92 N.E.3d 877.

## II.  Intervening Trial-Court Proceedings

{¶ 7} According to the state's merit brief, on January 29, 2018—after the state had appealed the court of appeals' judgment to this court but prior to our accepting jurisdiction—the trial court accepted Bishop's new guilty plea to the same possession offense and sentenced him to time served.  We must address whether this case is moot.

{¶ 8} Nothing in the record before us confirms that the trial court did, in fact, accept a new guilty plea.  But even if the court did accept a new plea, we have held that we may resolve a matter, even if it is moot with respect to the parties, when it involves an issue of great public or general interest that will outlive the instant controversy.  *See, e.g.*, *Franchise Developers, Inc. v. Cincinnati*, 30 Ohio St.3d 28, 31, 505 N.E.2d 966 (1987).  We have recognized this exception to the mootness doctrine in other certified-conflict cases and held that it was appropriate to resolve the question of law presented.  *State v. Massien*, 125 Ohio St.3d 204, 2010-Ohio-1864, 926 N.E.2d 1282, ¶ 4, fn. 1; *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, 814 N.E.2d 837, ¶ 5.  For this reason, we proceed to consider the certified-conflict question.

## III.  Analysis

{¶ 9} Turning to the merits, we confront a conflict between judgments of the Second District Court of Appeals and the Fifth and Eighth District Courts of Appeals regarding an interpretation of the requirements of Crim.R. 11(C).  The Second District Court of Appeals has held that the trial court must inform a defendant who is on postrelease control and is pleading guilty to a new felony offense of the trial court's authority to revoke the defendant's postrelease control and impose a prison term consecutively to any term of imprisonment it imposes for that new felony offense.  *See* 2017-Ohio-8332 at ¶ 7; *Branham*, 2d Dist. Clark No. 2013 CA 49, 2014-Ohio-5067, at ¶ 14.  The Second District has interpreted that requirement to be part of the trial court's duty under Crim.R. 11(C)(2)(a) to advise

the defendant of "the maximum penalty involved." *See Landgraf*, 2d Dist. Clark No. 2014 CA 12, 2014-Ohio-5448, at ¶ 23 (lead opinion). In contrast, the Fifth and Eighth District Courts of Appeals have held that Crim.R. 11 does not require the trial court to inform the defendant of the possible effects of his guilty plea to a new offense on his postrelease control. *Hicks*, 5th Dist. Delaware No. 09CAA090088, 2010-Ohio-2985, at ¶ 10-13 (Crim.R. 11(D) did not require the trial court to inform the defendant, who was pleading guilty to a misdemeanor offense, of the possible effects of his plea on his postrelease control); *Dotson*, 8th Dist. Cuyahoga No. 101911, 2015-Ohio-2392, at ¶ 13 (Crim.R. 11(C) did not require the trial court to inform the defendant, who was pleading guilty to a felony offense, of the possible effects of his plea on his postrelease control).

{¶ 10} A criminal defendant's choice to enter a guilty plea is a serious decision. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25. Due process requires that a defendant's plea be made knowingly, intelligently, and voluntarily; otherwise, the defendant's plea is invalid. *Id.*

{¶ 11} Crim.R. 11(C) prescribes the process that a trial court must use before accepting a plea of guilty to a felony. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 8. The trial court must follow certain procedures and engage the defendant in a detailed colloquy before accepting his or her plea. *Clark* at ¶ 26; *see* Crim.R. 11(C). The court must make the determinations and give the warnings that Crim.R. 11(C)(2)(a) and (b) require and must notify the defendant of the constitutional rights that Crim.R. 11(C)(2)(c) identifies. *Veney* at ¶ 13. While the court must strictly comply with the requirements listed in Crim.R. 11(C)(2)(c), the court need only substantially comply with the requirements listed in Crim.R. 11(C)(2)(a) and (b). *Id.* at ¶ 18.

{¶ 12} Most relevant here, Crim.R. 11(C)(2) includes the following among the determinations a trial court must make:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

**{¶ 13}** We must also consider the specifics of R.C. 2929.141. That statute provides that when a defendant who is on postrelease control is convicted of or pleads guilty to a new felony, the trial court may terminate the postrelease-control term and convert it into additional prison time. R.C. 2929.141(A)(1). This additional penalty is often referred to as a "judicial sanction." *See, e.g.*, *State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, 85 N.E.3d 700, ¶ 25. The additional term can be as long as the greater of 12 months or the amount of time that remained on the existing postrelease-control term. R.C. 2929.141(A)(1). The court is not required to impose an additional prison term for the violation. *See id.* But if it does, the defendant must serve the additional term consecutively to the prison term for the new felony. *Id.*

### A. Crim.R. 11(C)(2)(a)—The "maximum penalty involved" includes the potential R.C. 2929.141(A) sentence

**{¶ 14}** At issue here is the impact of R.C. 2929.141(A) on the portion of Crim.R. 11(C)(2)(a) that requires a trial court to ensure during the plea hearing that the defendant is entering his guilty plea "with understanding of the nature of the charges and of the maximum penalty involved." In arguing that the trial court need not inform a defendant of a potential consecutive prison term under R.C. 2929.141(A), appellant, the state of Ohio, bypasses the plain language of the statute and the rule and looks instead to this court's decision in *State v. Johnson*, 40 Ohio St.3d 130, 532 N.E.2d 1295 (1988). In *Johnson*, we reasoned that neither the United States Constitution nor the Ohio Constitution requires a trial court to inform

a defendant during his plea hearing of the maximum total of the sentences he faces or that the sentences can be imposed consecutively. *Id.* at 133. Regarding Crim.R. 11, we said that "[i]t would seem to be beyond a reasonable interpretation to suggest that the rule refers cumulatively to the total of all sentences received for all charges which a criminal defendant may answer in a single proceeding." *Id.* We concluded that because the trial court in *Johnson* explained to the defendant the individual maximum sentences possible, his guilty plea was proper. *Id.*

{¶ 15} Crim.R. 11(C)(2)(a) has been amended since *Johnson* so that a single plea can now apply to multiple charges, *see* 83 Ohio St.3d xciii, cix (effective July 1, 1998). Nevertheless, the state argues that the rule's advisements still apply only to the "maximum penalty involved" for the crimes to which the defendant pleads guilty. We disagree.

{¶ 16} First, what happened to the defendant in *Johnson* is a far cry from what happened to Bishop. Johnson was told of his potential sentences for each individual offense; the trial court just failed to tell Johnson the sentences for each offense could run consecutively. Here, the trial court told Bishop that he could receive a maximum sentence of 12 months for his fifth-degree-felony conviction. But the trial court did not tell Bishop that he was also subject to a separate consecutive 12-month sentence for his postrelease-control violation.

{¶ 17} Second, and more importantly, we must look to the plain language of the statutes involved. R.C. 2929.141(A)(1) provides that "[u]pon the conviction of or plea of guilty to a felony by a person on post-release control at the time of the commission of the felony, the court may terminate the term of post-release control" and impose a consecutive prison term. Sentences imposed under R.C. 2929.141(A) cannot stand alone. The court may impose the sentence only upon a conviction for or plea of guilty to a new felony, making the sentence for committing a new felony while on postrelease control and that for the new felony itself inextricably

intertwined. By any fair reading of Crim.R. 11(C)(2), the potential R.C. 2929.141(A) sentence was part of the "maximum penalty involved" in this case.

### B. Bishop need not show prejudice

{¶ 18} Finally, Bishop need not show that the trial court's error prejudiced him—i.e., that he would not have entered the guilty plea if he had known that the trial court could terminate his existing postrelease control and convert it into additional prison time, *see State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990), citing *State v. Stewart*, 51 Ohio St.2d 86, 93, 364 N.E.2d 1163 (1977).

{¶ 19} A trial court need only substantially comply with the nonconstitutional advisements listed in Crim.R. 11(C)(2)(a). *Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, at ¶ 18. But "[w]hen the trial judge does not *substantially* comply with Crim.R. 11 in regard to a nonconstitutional right, reviewing courts must determine whether the trial court *partially* complied or *failed* to comply with the rule." (Emphasis sic.) *Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶ 32. "If the trial judge partially complied, e.g., by mentioning mandatory postrelease control without explaining it, the plea may be vacated only if the defendant demonstrates a prejudicial effect." *Id.* But if the trial court completely failed to comply with the rule, the plea must be vacated. *Id.* Complete failure " 'to comply with the rule does not implicate an analysis of prejudice.' " *Id.*, quoting *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22.

{¶ 20} Here, the trial court completely failed to inform Bishop that a consecutive prison sentence under R.C. 2929.141(A) was possible. That is not partial compliance. Bishop need not show prejudice.

### IV. Conclusion

{¶ 21} We conclude that Crim.R. 11(C)(2)(a) requires a trial court to advise a criminal defendant on postrelease control for a prior felony, during his plea hearing in a new felony case, of the trial court's authority under R.C. 2929.141 to

8

terminate the defendant's existing postrelease control and to impose a consecutive prison sentence for the postrelease-control violation. We therefore answer the certified question in the affirmative and affirm the judgment of the Second District Court of Appeals.

Judgment affirmed.

O'CONNOR, C.J., and O'DONNELL, J., concur.

DEWINE, J., concurs in judgment only, with an opinion.

KENNEDY, J., dissents, with an opinion.

FISCHER, J., dissents, with an opinion joined by BROWN, J.

SUSAN D. BROWN, J., of the Tenth District Court of Appeals, sitting for DEGENARO, J.

_____

**DEWINE, J., concurring in judgment only.**

{¶ 22} I agree that the judgment of the court of appeals should be affirmed. The potential sentence for a postrelease-control violation is part of the "maximum penalty involved" when a defendant pleads guilty to a new felony. I write separately, however, because I disagree with the lead opinion's dictum about mootness.

{¶ 23} There is no question that this case is not moot. As the lead opinion notes, there is nothing in the record to confirm that the trial court accepted Dustin Bishop's guilty plea following the state's notice of appeal to this court. And even if the trial court did act, its order would be void because it acted without jurisdiction.

{¶ 24} In its decision on October 27, 2017, the court of appeals remanded this case for resentencing by the trial court. The state filed a timely notice of appeal on December 7, 2017. According to the state's merit brief, before this court had accepted jurisdiction, the trial court, acting on the remand order, resentenced Dustin Bishop. But once the notice of appeal was filed in this court, the trial court was divested of jurisdiction. We were confronted with a similar situation in *State v.*

*Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, in which, after the state filed a notice of appeal but before this court accepted jurisdiction, the trial acted on a remand order to resentence a defendant. The defendant moved to dismiss the state's appeal as moot. This court denied the motion:

> "An appeal is perfected upon the filing of a written notice of appeal. Once a case has been appealed, the trial court loses jurisdiction except to take action in aid of the appeal." Thus, the trial court in this case had no jurisdiction to resentence the defendant once the state had filed its notice of appeal.

(Citations omitted.) *Id.* at ¶ 8, quoting *In re S.J.*, 106 Ohio St.3d 11, 2005-Ohio-3215, 829 N.E.2d 1207, ¶ 9. Likewise, the trial court here had no jurisdiction to resentence Bishop. Therefore, even if the trial court did act, its order would be void and the state's appeal would not be moot.

{¶ 25} Because the state's appeal is not moot, there is no need to digress into a discussion of the propriety of considering certified-conflict questions in moot cases. But because the lead opinion takes that path, I write to explain why I believe its dictum is misguided.

{¶ 26} The Ohio Constitution vests the "judicial power of the state" in "a supreme court, courts of appeals, courts of common pleas and divisions thereof, and such other courts inferior to the supreme court as may from time to time be established by law." Ohio Constitution, Article IV, Section 1. While the language of our Constitution does not mirror the "cases" and "controversies" language of the United States Constitution, *see* United States Constitution, Article III, Section 2, it is generally understood that the grant of the judicial power requires that we decide only "actual controversies where the judgment can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles

or rules of law which cannot affect the matter at issue in the case before it," *Travis v. Pub. Util. Comm.*, 123 Ohio St. 355, 359, 175 N.E. 586 (1931). When a case becomes moot, there is no longer a controversy for this court to decide.

**{¶ 27}** We have recognized exceptions to this principle and have decided cases that were moot after having found that the issues presented were capable of repetition yet evading review. *See Adkins v. McFaul*, 76 Ohio St.3d 350, 350-351, 667 N.E.2d 1171 (1996). But there is no reason to believe that the issue in this case—plea-hearing requirements for defendants currently on postrelease control— will evade review. Nor does the fact that this case raises a question of public or great general interest militate against applying the mootness doctrine. By definition, many cases we accept on jurisdictional appeal involve questions of "public or great general interest pursuant to Article IV, Section 2(B)(2)(e) of the Ohio Constitution." S.Ct.Prac.R. 5.02(A)(3). But being of public or great general interest has never been considered sufficient to allow us to decide a jurisdictional appeal that has been rendered moot by subsequent events.

**{¶ 28}** Despite the constitutional provision tying our authority to the judicial power, the justices joining the lead opinion apparently believe that different rules apply to appeals that come to us as certified conflicts. But like our review of jurisdictional appeals, our review of certified-conflict questions depends on the existence of a case. If a court of appeals finds that its judgment conflicts with that of another court, it certifies "the record of *the case* to the supreme court for review and *final determination*." (Emphasis added.) Ohio Constitution, Article IV, Section 3(B)(4); *see* S.Ct.Prac.R. 8.02(D). Unlike certified state-law questions from federal court, which we answer without deciding the underlying case, we decide certified-conflict cases and enter judgment. If a case becomes moot, there is no controversy for us to decide and we should dismiss it.

**{¶ 29}** But all of this discussion is unnecessarily advisory. This case is not moot. We should limit our discussion to the controversy before us.

_____

**KENNEDY, J., dissenting.**

{¶ 30} When an offender violates the terms of his or her postrelease control by committing a new felony, the offender may be prosecuted for the new felony and judicially sanctioned with a prison term for the postrelease-control violation. R.C. 2929.141(A). At issue in this case is whether Crim.R. 11(C)(2)(a) requires a trial court taking a guilty plea to the new felony to advise the accused that an additional, consecutive sentence for the postrelease-control violation may be imposed.

{¶ 31} A trial court may accept a plea only if it is knowingly, intelligently, and voluntarily made, and relevant here, Crim.R. 11(C)(2)(a) directs the court to inform the accused of the maximum penalty for each offense charged that will be resolved by the plea. However, a postrelease-control violation does not result in a criminal "charge" because it is not a new criminal offense and involves only a possible judicial sanction separate from the punishment that may be imposed for the new felony. Therefore, because the trial court is not required to advise the accused about the judicial sanction that may be imposed pursuant to R.C. 2929.141(A), I dissent and would answer the certified question in the negative and reverse the judgment of the Second District Court of Appeals.

**Facts and Procedural History**

{¶ 32} Appellee, Dustin Bishop, was indicted on two counts: possession of heroin, a fifth-degree felony, and possession of drug paraphernalia, a misdemeanor. Appellant, the state of Ohio, and Bishop entered into a plea agreement in which he agreed to plead guilty to heroin possession in exchange for the dismissal of the drug-paraphernalia count.

{¶ 33} At the plea hearing, the trial court informed Bishop that the fifth-degree felony count of heroin possession carried a maximum penalty of 12 months in prison and a $2,500 fine. It also advised him that he could be placed on

community control and that if he violated its terms, he could be imprisoned for 12 months. The court further told him:

> Upon finishing any prison sentence, you may be placed on what's called post-release control or PRC wherein you'd be under the supervision of the parole board for three years. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: If you violate any of the terms of your release from prison or you violate any law while you're under the supervision of the parole board then the parole board can add onto your sentence nine months for each individual violation up to a total of 50 percent of the stated prison term for multiple violations.
>
> If your violation is a felony, you could receive from the Court a prison term of either one year or whatever time is remaining on the post-release control, whichever is the longer time, plus you could be prosecuted and sentenced for the new felony, itself.
>
> Also, for any violations, the parole board could extend the length of the post-release control or impose other more restrictive sanctions upon you.
>
> I mentioned there, I believe, three items without giving you a chance to respond right away. Do you understand all that?
>
> THE DEFENDANT: Yes.

(Capitalization sic.)

{¶ 34} Neither Bishop nor defense counsel informed the trial court that Bishop was on postrelease control when he committed the new felony, and there was no objection to the court's failure to inform Bishop that R.C. 2929.141(A)

might subject him to a consecutive prison sentence for the postrelease-control violation. After being informed of the constitutional rights he would be waiving, Bishop pleaded guilty to heroin possession. The court ordered a presentence investigation and scheduled a sentencing hearing.

{¶ 35} The presentence-investigation report contains the earliest mention in the record of the fact that Bishop was on postrelease control when he committed the new felony. At sentencing, the trial court noted Bishop's significant criminal history (including 14 prior felony convictions) and that he was on postrelease control at the time of his newest offense, and it imposed a 12-month sentence to be served consecutively with a 9-month sentence for heroin possession. Neither Bishop nor defense counsel objected, and Bishop did not move to withdraw his plea due to a surprise at sentencing.

{¶ 36} Rather, Bishop challenged the validity of his plea for the first time on appeal, asserting that he had not knowingly, intelligently, and voluntarily entered the plea because the trial court had not informed him that R.C. 2929.141 permitted the court to terminate his postrelease control and order him to serve consecutive prison terms for the new felony and the violation of the terms of his postrelease control. The court of appeals agreed that the plea was invalid because of the lack of this advisement, and it vacated the guilty plea and remanded the matter for further proceedings. 2017-Ohio-8332, ¶ 7, 9. We accepted the state's discretionary appeal and recognized that the Second District's decision conflicted with decisions of the Fifth and Eighth District Courts of Appeals. 152 Ohio St.3d 1404, 2018-Ohio-723, 92 N.E.3d 877.

{¶ 37} The sole issue presented in this case is whether Crim.R. 11(C)(2)(a) requires a trial court accepting a guilty plea to a felony to inform the accused of a possible judicial sanction that could be imposed pursuant to R.C. 2929.141(A) for a violation of the terms of postrelease control.

**Law and Analysis**

**{¶ 38}** Crim.R. 11(C)(2) provides:

> In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

**{¶ 39}** "To interpret court rules, this court applies general principles of statutory construction. * * * Therefore, we must read undefined words or phrases in context and then construe them according to rules of grammar and common usage." *State ex rel. Law Office of Montgomery Cty. Pub. Defender v. Rosencrans*, 111 Ohio St.3d 338, 2006-Ohio-5793, 856 N.E.2d 250, ¶ 23. We must give effect to the words used in the rule, refraining from inserting or deleting words. *Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 53, 524 N.E.2d 441 (1988). If the language of a rule is plain and unambiguous and conveys a clear and definite meaning, then there is no need for this court to resort to the rules of interpretation; rather, we apply the rule as written. *State ex rel. Potts v. Comm. on Continuing Legal Edn.*, 93 Ohio St.3d 452, 456, 755 N.E.2d 886 (2001).

**{¶ 40}** The language of Crim.R. 11(C)(2)(a) is plain and unambiguous. Crim.R. 11(C)(2)(a) requires a trial court accepting a guilty "plea" from a defendant to ensure that the defendant understands the "charges" and the "maximum penalty involved." The words "plea," "charges," and "maximum penalty" are not defined

in either the Criminal Rules or the Revised Code, but they have common, everyday meanings that we can apply.

{¶ 41} A "plea" is "[a]n accused person's response of 'guilty,' 'not guilty,' or 'no contest' to a criminal charge." *Black's Law Dictionary* 1337 (10th Ed.2014). A "charge" is "[a] formal accusation of an offense as a preliminary step to prosecution." *Id.* at 282. The word "maximum penalty" refers to "[t]he heaviest punishment permitted by law." *Id.* at 1314.

{¶ 42} Accordingly, the plea is the defendant's response to a charge filed alleging an offense, and the maximum penalty is the heaviest punishment prescribed by statute for that offense. Crim.R. 11(C)(2)(a) therefore requires the trial court to advise the defendant of the maximum penalty for each of the charges that the accused is resolving with the plea. Here, that means that the trial court was required to inform Bishop that he could be sentenced to up to 12 months in prison and a $2,500 fine for possession of heroin, and the trial court did that in the plea colloquy.

{¶ 43} Our decision in *State v. Johnson*, 40 Ohio St.3d 130, 532 N.E.2d 1295 (1988), supports this plain reading of the rule. In that case, the accused had agreed to plead guilty to aggravated robbery, robbery, and forgery, and in its plea colloquy, the trial court informed him of the maximum possible penalty for each individual charge without advising him that the court had authority to run the sentences consecutively. *Id.* at 130-131. The accused pleaded guilty, the court accepted the pleas, and it imposed consecutive sentences. *Id.* at 131. The Second District Court of Appeals reversed and invalidated the pleas, holding that the trial court had failed to advise the accused "as to the maximum sentence possible for such violations because the trial court failed to inform him that the sentences may be imposed to run consecutively, rather than concurrently." *Id.* at 131-132.

{¶ 44} We reversed, concluding that the trial court's application of Crim.R. 11(C)(2)(a) was not prejudicial error. *Id.* at 134-135. We explained:

Upon its face the rule speaks in the singular. The term "the charge" indicates a single and individual criminal charge. So, too, does "the plea" refer to "a plea" which the court "shall not accept" until the dictates of the rule have been observed. Consequently, the term "the maximum penalty" which is required to be explained is also to be understood as referring to a single penalty. *In the context of "the plea" to "the charge," the reasonable interpretation of the text is that "the maximum penalty" is for the single crime for which "the plea" is offered.* It would seem to be beyond a reasonable interpretation to suggest that the rule refers cumulatively to the total of all sentences received for all charges which a criminal defendant may answer in a single proceeding.

(Emphasis added.) *Johnson* at 133.

{¶ 45} We further reasoned that

Crim.R. 11 applies only to the entry and acceptance of the plea. It has no relevance to the exercise of the trial court's sentencing discretion at that stage other than directing the court to proceed with or impose sentencing. Thus, it can hardly be said that the rule *imposes upon a trial judge a duty to explain what particular matters he may, at a later date, determine are significant to the exercise of his discretion.* Moreover, explaining definitions of basic terms and calculating potential sentences are matters which are within the purview of legal representation, and of which even minimally competent trial counsel are capable.

17

(Emphasis added.) *Id.* at 134.

{¶ 46} *Johnson* therefore stands for the proposition that the trial court is required to inform the accused of the maximum penalty for each charged offense that will be resolved by the plea.

{¶ 47} The lead opinion correctly notes that since we decided *Johnson*, Crim.R. 11(C)(2)(a) has been amended to require the trial court to ensure that the accused understands the nature of the "charges" and the maximum penalty involved. However, we amended the rule in 1998—almost a decade after we decided *Johnson*—"in light of changes in terminology used in the criminal law of Ohio effective July 1, 1996," by Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136 ("S.B. 2"), and the staff comment to the amendment does not indicate that making the word "charge" plural was intended to be a substantive change. 83 Ohio St.3d xciii, cxi. We do not make significant revisions to our procedural rules cryptically, and we have never held that our holding in *Johnson* has been abrogated by the amended rule. Ohio appellate courts continue to follow *Johnson* and hold that Crim.R. 11(C)(2)(a) does not require the trial court to advise a defendant during a plea colloquy of the possibility of consecutive sentencing. *E.g.*, *State v. Dansby-East*, 2016-Ohio-202, 57 N.E.3d 450, ¶ 16-17 (8th Dist.); *State v. Gabel*, 6th Dist. Sandusky Nos. S-14-038, S-14-042, S-14-043, and S-14-045, 2015-Ohio-2803, ¶ 13-14; *State v. Mack*, 1st Dist. Hamilton No. C-140054, 2015-Ohio-1430, ¶ 25.

{¶ 48} Importantly, the judicial sanction authorized by R.C. 2929.141 was not enacted by the General Assembly until 2002, so it could not have been contemplated by the amendment to Crim.R. 11(C)(2)(a). *See* Am.Sub.H.B. No. 327, 149 Ohio Laws IV, 7536, 7576, 7626. But in any case, the amendment does not support the lead opinion's conclusion that the trial court is required to inform the defendant about penalties that may result from the guilty plea but that are not part of the "maximum penalty involved" for the "charges" resolved by the "plea." Simply put, there is no "charge" brought for a violation of the terms of postrelease

control, because the General Assembly has not made a postrelease-control violation a separate crime as it has, for example, in criminalizing the violation of a protective order. *See* R.C. 2919.27. This conclusion is dictated by an understanding of how postrelease control works.

{¶ 49} In 1996, the General Assembly enacted the postrelease-control statute as part of a comprehensive revision of Ohio's criminal sentencing scheme, S.B. 2, and its companion bill, Am.Sub.S.B. No. 269, 146 Ohio Laws, Part VI, 10752 ("S.B. 269"). As we explained in *Woods v. Telb*, 89 Ohio St.3d 504, 508, 733 N.E.2d 1103 (2000), our first decision to address the postrelease-control statute, S.B. 2 and S.B. 269 "chang[ed] the landscape of Ohio's sentencing system" to provide "truth in sentencing," primarily accomplished by eliminating both indefinite sentences and parole and replacing them with definite sentences and postrelease control. The legislature removed the Adult Parole Board's authority to determine how long an offender stays in prison and instead provided that offenders are subject to mandatory and discretionary terms of postrelease control that commence upon release from imprisonment.

{¶ 50} Postrelease control is a "period of supervision by the adult parole authority after a prisoner's release from imprisonment that includes one or more post-release control sanctions imposed under section 2967.28 of the Revised Code." R.C. 2967.01(N). The parole board has authority to impose "conditions of release under a post-release control sanction that the board or court considers appropriate, and the conditions of release may include [a] community residential sanction, community nonresidential sanction, or financial sanction." R.C. 2967.28(D)(1).

{¶ 51} An offender who is released on postrelease control is under the general jurisdiction of the Adult Parole Authority and supervised by parole officers as if the offender had been placed on parole. R.C. 2967.28(F)(1). If the Adult Parole Authority determines that an offender has violated a condition of postrelease

control, it may impose a more restrictive condition (but not a residential sanction that includes a prison term) or it may refer the matter for a hearing before the parole board, which has the authority to impose a prison term for a postrelease-control violation. R.C. 2967.28(F)(2) and (3). Importantly, courts are not involved in determining whether a violation occurred or what the sanction should be. The sanction, even if a prison term, is administratively imposed.

{¶ 52} However, if an offender violates the terms of postrelease control by committing a new felony, upon the conviction or plea of guilty for that offense, the court *may* terminate postrelease control and impose either community-control sanctions or a prison term for the postrelease-control violation for the greater of 12 months or the time remaining to be served on postrelease control. R.C. 2929.141(A). *If* a prison term is imposed, it is to be served consecutively to the sentence for the new felony but must be reduced by any prison term administratively imposed by the parole board. R.C. 2929.141(A)(1).

{¶ 53} R.C. 2929.141(A)(1) expressly distinguishes between the penalty imposed for a new felony and the sanction imposed for a postrelease-control violation, stating that the court may impose a prison term for the postrelease-control violation "[i]n addition to any prison term for the new felony." Our decisions have long recognized this distinction as well.

{¶ 54} In *Woods*, we rejected the argument that permitting the Adult Parole Board to impose postrelease control on offenders violated the separation-of-powers doctrine by allowing the executive branch to exercise judicial authority, exactly because "post-release control is part of the original judicially imposed sentence" and because postrelease-control sanctions are "aimed at behavior modification in the attempt to reintegrate the offender safely into the community, not mere punishment for an additional crime." 89 Ohio St.3d at 512, 733 N.E.2d 1103.

{¶ 55} Similarly, in *State v. Martello*, we held that it does not offend the double-jeopardy protections of the Ohio and United States Constitutions to

prosecute an offender who was sanctioned for violating the terms of postrelease control for the same conduct that was the reason for the sanction. 97 Ohio St.3d 398, 2002-Ohio-6661, 780 N.E.2d 250, ¶ 1. We explained that "the General Assembly has indicated its clear intent that the prison term imposed for the violation of postrelease control is a reinstatement of part of the original sentence for violating the conditions of supervision, and is not meant to be a separate criminal punishment." *Id*. at ¶ 19. We continued: "[J]eopardy does not attach when a defendant receives a term of incarceration for the violation of conditions of postrelease control. Such a term of incarceration is attributable to the original sentence and is not a 'criminal punishment' for Double Jeopardy Clause purposes * * *." *Id*. at ¶ 26.

{¶ 56} Accordingly, as the statutory scheme demonstrates, a violation of the terms of postrelease control is not separately charged when the accused commits a new felony, and it is not part of the charge resolved by the accused's guilty plea resolving the new felony charged in the case. Nor is any sanction imposed for the postrelease-control violation part of the "maximum penalty involved," because it is not part of a new sentence that may be imposed for a new felony but, rather, is part of the original sentence that imposed postrelease control.

{¶ 57} Nonetheless, the lead opinion reasons that a prison term imposed pursuant to R.C. 2929.141(A) "cannot stand alone" and is "inextricably intertwined" with the sentence imposed for the new felony that constitutes the postrelease-control violation. Lead opinion at ¶ 17. It is unclear whether the justices joining the lead opinion view the postrelease-control violation as a "charge" or whether they view the judicial sanction imposed as part of the maximum penalty involved. But either way, the lead opinion's analysis cannot be squared with the language of the postrelease-control statute or our decisions recognizing that a sanction for a postrelease-control violation is not punishment for the commission of a new offense. It is true that the postrelease-control violation is connected to the

new felony, but that is only because the guilty plea or conviction is the form of proof that the General Assembly has specified for showing that an offender violated the terms of his or her postrelease control by committing a felony. Standing alone, that does not make the violation any part of the charge resolved by the plea or make the sanction any part of the punishment for the conviction.

**{¶ 58}** And as the lead opinion notes, at the time of the plea, there was only a "potential R.C. 2929.141(A) sentence." *Id.* at ¶ 17. This language implies that a Crim.R. 11(C)(2)(a) advisement is required for any "possible" or "potential" sanction that may be imposed as a collateral consequence of pleading guilty to a felony. But as we recognized in *Johnson*, Crim.R. 11(C)(2)(a) simply does not impose any duty on the trial court to inform the accused about its sentencing discretion. 40 Ohio St.3d at 134, 532 N.E.2d 1295. Rather, calculating potential sentences and informing the accused of the collateral consequences of a conviction are matters within the purview of legal representation. It is incumbent on defense counsel to know that the client committed a felony while on postrelease control, and an accused's guilty plea to an offense without knowing the legal consequences that may result might raise an issue of ineffective assistance of counsel but is not invalid.

**{¶ 59}** Lastly, the lead opinion fails to appreciate the logical consequences of this court's judgment today. Its reasoning applies equally to an offender who violates community-control sanctions by committing a new offense. Although Crim.R. 11(C)(2) does not apply to community-control revocation proceedings, *e.g.*, *State v. Mayle*, 2017-Ohio-8942, 101 N.E.3d 490, ¶ 13-14 (11th Dist.) (citing cases), the possible imposition of a sentence for an offender's violation of the terms of his or her probation is "inextricably intertwined" with the commission of the new offense that constitutes the probation violation. Following the lead opinion's logic, the trial court's failure to advise the defendant that a probation violation could result in the imposition of a sentence served consecutively to the sentence for the new

offense would likewise be a complete failure to comply with Crim.R. 11(C)(2)(a), invalidating the plea. *See generally* R.C. 2929.25(A)(3)(c); *State v. Jones*, 2017-Ohio-943, 86 N.E.3d 821, ¶ 19 (7th Dist.) (upholding consecutive sentences for multiple probation violations). We have never interpreted Crim.R. 11(C)(2)(a) in this manner, and we should not do so today.

{¶ 60} More fundamentally, for more than a decade, we have grappled with case after case addressing the consequences of a trial court's failure to properly impose postrelease control, debating whether the resulting sentence is void or voidable. *See State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 23 (holding that a trial court's failure to properly impose a statutorily mandated term of postrelease control renders the sentence contrary to law and void); *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, ¶ 12-13 (explaining that a void sentence is a nullity and a de novo sentencing hearing therefore is required to correct it); *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 17, 36 (overruling *Bezak*, holding that the improper imposition of postrelease control does not affect the valid parts of the conviction and sentence, and stating that resentencing is limited to properly imposing postrelease control); *State v. Billiter*, 134 Ohio St.3d 103, 2012-Ohio-5144, 980 N.E.2d 960, ¶ 12 (allowing an offender to challenge an escape conviction by collaterally attacking the imposition of postrelease control); *State v. Gordon*, 153 Ohio St.3d 601, 2018-Ohio-1975, 109 N.E.3d 1201, ¶ 12 (R.C. 2929.19(B)(2)(e) does not require the trial court at sentencing to advise an offender of the judicial sanction authorized by R.C. 2929.141(A) for committing a new felony while on postrelease control).

{¶ 61} This court's judgment today sparks a new debate by creating a new form of postrelease-control error on par with these cases. Courts of this state have held that a guilty plea that was not knowing, intelligent, and voluntary was obtained in violation of due process and is "void." *E.g.*, *State v. Gheen*, 7th Dist. Belmont

No. 17 BE 0023, 2018-Ohio-1924, ¶ 9, citing *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Miller*, 8th Dist. Cuyahoga No. 102848, 2015-Ohio-4688, ¶ 5; *State v. Davis*, 2d Dist. Montgomery No. 24927, 2012-Ohio-4745, ¶ 4. According to the lead opinion, an accused's plea is not knowing, intelligent, and voluntary if he or she is not informed that the trial court can impose a prison term for a violation of the terms of postrelease control when the accused pleads guilty to a felony that also constitutes the violation. Such a plea is presumed invalid, and no showing of prejudice is needed; that is, it is void.

**{¶ 62}** However, during the plea hearing, the trial court generally will not know that an offender was on postrelease control at the time of the offense unless the offender or defense counsel volunteers that information; for example, that fact does not appear in this record until the filing of the presentence-investigation report. But if the court does not know that the R.C. 2929.141(A) judicial sanction is in play, it has no reason to give the advisement required by this court's judgment today. The court's judgment therefore brings the validity of countless guilty pleas into question, regardless of whether the accused was prejudiced by any error. It also gives defendants a perverse incentive to conceal the fact that they were on postrelease control when they committed their new offense so that they may "wait and see" what sentence is imposed and then raise the issue like a rabbit from the hat in the court of appeals. Our decisions should not countenance such gamesmanship, but this court's judgment today makes that a winning strategy.

## Conclusion

**{¶ 63}** The General Assembly has enacted a clear-cut statutory scheme of supervision of offenders reentering society after a term of incarceration. It made policy choices by providing that a violation of postrelease control is not a crime and by granting trial courts discretion in deciding whether to impose a prison term as a sanction for that violation. Rather than second-guessing these policy choices

in the guise of interpreting a court rule, we should leave the policymaking to the General Assembly, the sole arbiter of public policy.

{¶ 64} Crim.R. 11(C)(2)(a) advisements were never intended for nonexistent criminal offenses that cannot be charged or for a potential penalty that cannot be known at the time of a plea. Rather, the trial court's duty in accepting a guilty plea is to ensure that the accused understands the nature of the charges to be resolved by the plea and the maximum penalty that may be imposed on each of those charges. Because a violation of the terms of postrelease control is not a new charge and because the judicial sanction imposed for the violation is not a punishment imposed on the guilty plea to an offense, Bishop's plea hearing complied with Crim.R. 11(C)(2)(a).

{¶ 65} For these reasons, I would answer the certified question in the negative and reverse the judgment of the Second District Court of Appeals.

_____

**FISCHER, J., dissenting.**

{¶ 66} I respectfully dissent. When a defendant pleads guilty to a new felony offense while on postrelease control for a prior felony, Crim.R. 11(C)(2)(a) does not require a trial court to advise that defendant at the plea hearing for the new felony offense of the court's sentencing discretion under R.C. 2929.141(A) to terminate the defendant's existing postrelease control and impose a consecutive prison sentence for the postrelease-control violation.

### I. This case is not moot

{¶ 67} As the lead opinion notes, there is nothing in the record before this court to show that after the court of appeals' remand of the case, appellee, Dustin Bishop, entered a new guilty plea to possession of heroin and that the trial court accepted this new guilty plea and resentenced him. Because the record before us indicates that there is a live controversy, this case is not moot.

**{¶ 68}** Moreover, despite the analysis set forth in the lead opinion and as the opinion concurring in judgment only explains, we need not consider this court's ability to address moot questions of law; even if the trial court had accepted a guilty plea and resentenced Bishop pursuant to the appellate court's remand of the case, our precedent is clear that the trial court lacked jurisdiction to do so. *See State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 8. Neither party challenges our decision in *Washington*; *Washington* remains good law. Any purported resentencing after the state had perfected its appeal could not, therefore, render the certified-conflict question before this court moot.

## II. Crim.R. 11(C)(2)(a) does not require advisement of a trial court's R.C. 2929.141(A) discretionary authority

**{¶ 69}** The lead opinion contains the conclusion that "[b]y any fair reading of Crim.R. 11(C)(2), the potential R.C. 2929.141(A) sentence was part of the 'maximum penalty involved' in this case." Lead opinion at ¶ 17. This conclusion is not supported by our caselaw interpreting the language of Crim.R. 11(C)(2)(a).

**{¶ 70}** "Crim.R. 11(C) governs the process that a trial court must use before accepting a felony plea of guilty * * *." *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 8. Pursuant to Crim.R. 11(C)(2)(a), a trial court shall not accept a plea of guilty without

> [d]etermining that the defendant is making *the plea* voluntarily, with understanding of the nature of the charges and of *the maximum penalty involved*, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(Emphasis added.)

**{¶ 71}** Crim.R. 11(C)(2)(a) sets out distinct concepts. *See State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, ¶ 22. One of these distinct concepts is that the trial court must inform the defendant who is pleading guilty of "the maximum penalty involved."

**{¶ 72}** This court, in an opinion that analyzed a prior version of Crim.R. 11(C)(2)(a), determined that " 'the maximum penalty' " is the penalty "for the single crime for which 'the plea' is offered." *State v. Johnson*, 40 Ohio St.3d 130, 133, 532 N.E.2d 1295 (1988), quoting former Crim.R. 11(C)(2)(a), 46 Ohio St.2d xxxi, xxxii (effective July 1, 1976). The lead opinion distinguishes this court's analysis in *Johnson* on the bases that Crim.R. 11(C)(2)(a) has since been amended to allow for a single plea to apply to multiple charges and that the facts in *Johnson* are dissimilar to the facts in this case.

**{¶ 73}** While we did interpret a prior version of Crim.R. 11(C)(2)(a) in *Johnson*, the plain language of the rule still demonstrates that "Crim.R. 11 applies only to the entry and acceptance of the plea," *Johnson* at 134, and that "the reasonable interpretation of the text is that 'the maximum penalty' is for the *single crime* [now "crimes"] for which 'the plea' is offered." (Emphasis added.) *Id.* at 133. In *Johnson*, the specific facts of the case had no bearing on this court's interpretation of the language of former Crim.R. 11(C)(2)(a). The court reviewed the plain language of former Crim.R. 11(C)(2)(a) and determined that "the maximum penalty involved" means the penalty for the "crime" for which "the plea" was offered, not that "the maximum penalty involved" means any and all possible future consequences of the plea.

**{¶ 74}** A plea of guilty is a complete admission of the defendant's guilt of the offense or offenses to which the plea is entered. Crim.R. 11(B)(1). As used in the Revised Code, the term "offenses" includes "aggravated murder, murder, felonies of the first, second, third, fourth, and fifth degree, misdemeanors of the first, second, third, and fourth degree, minor misdemeanors, and offenses not

specifically classified." R.C. 2901.02(A). Thus, a guilty plea is entered to a charged offense, and "the maximum penalty involved" is the maximum penalty for that offense to which the defendant pleads guilty and not additional or collateral possible punishments that are an indirect consequence of the guilty plea.

{¶ 75} The judicial sanction that the trial court could impose for a defendant's violation of the terms of his or her postrelease control is not a part of the penalty for the offense to which the plea is entered; instead, it is a potential sanction for the defendant's postrelease-control violation. The defendant's existing postrelease control is a part of his or her *prior* felony sentence, *see Woods v. Telb*, 89 Ohio St.3d 504, 512, 733 N.E.2d 1103 (2000); *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, ¶ 34 (Lanzinger, J., dissenting), not the sentence for the offense to which the defendant is later pleading guilty. Therefore, a defendant's punishment for violating the terms of postrelease control, a part of the defendant's prior sentence, cannot be considered a part of "the maximum penalty involved" for the criminal offense to which the current plea is entered.

{¶ 76} This conclusion is supported by the language of R.C. 2929.141(A). That statute specifically provides that "[u]pon * * * [a] plea of guilty to a felony by a person on post-release control at the time of the commission of the felony, the court may terminate the term of post-release control, and the court may * * * impose a prison term *for the post-release control violation*." (Emphasis added.) R.C. 2929.141(A)(1). The General Assembly made it clear that the judicial sanction permitted under R.C. 2929.141(A) is *not* imposed for the offense but may be imposed for the violation of the terms of the defendant's existing postrelease control. It is our duty to give effect to the words used in the statute, not to insert or delete words. *Cline v. Bur. of Motor Vehicles*, 61 Ohio St.3d 93, 97, 573 N.E.2d 77 (1991). Thus, pursuant to the plain language of R.C. 2929.141(A), the penalty for violating the terms of postrelease control cannot also be considered "the maximum penalty involved" for the new offense to which the plea is entered.

28

**{¶ 77}** The lead opinion would expand this court's interpretation of "the maximum penalty involved" to include a judicial sanction that may be imposed for the defendant's violation of the terms of his or her existing postrelease control by committing a felony offense. That conclusion is reached by relying on the proposition that "the sentence for committing a new felony while on postrelease control and that for the new felony itself [are] inextricably intertwined." Lead opinion at ¶ 17. The trial court's discretionary sentencing authority should have no bearing on this court's interpretation of Crim.R. 11(C), which governs strictly what occurs at a plea hearing. The implicit definition of "the maximum penalty involved" that is found in Crim.R. 11(C) has not changed since we decided *Johnson*, and as we stated in that case, Crim.R. 11(C) "has no relevance to the exercise of the trial court's sentencing discretion at [the plea hearing] other than directing the court to proceed with or impose sentencing," 40 Ohio St.3d at 134, 532 N.E.2d 1295. The effect of the lead opinion would be to make "the maximum penalty involved" include the speculative consequences of the plea in addition to the penalty for the charged offense to which the defendant is pleading guilty. Pursuant to R.C. 2929.141(A)(1), the trial court may "impose a prison term for the post-release control violation" that "shall be the greater of twelve months or the period of post-release control for the earlier felony minus any time the person has spent under the post-release control for the earlier felony." The trial court, without knowing the terms of the defendant's prior felony sentence, specifically the terms of the defendant's existing postrelease control, will not be able to inform the defendant of "the maximum penalty involved." At best, under the lead opinion's interpretation of Crim.R. 11(C)(2)(a), the trial court would be able to inform the defendant of an indeterminate range—from one year to a period of time that is equal to the time left on the defendant's postrelease-control term, whatever that might be—that the court may impose, at its discretion, that could be added to the defendant's sentence for the postrelease-control violation. The lead opinion would

add confusion to "the maximum penalty involved" and would leave the defendant to speculate as to "the maximum penalty" that he or she would receive for pleading guilty to the felony offense. Crim.R. 11(C)(2)(a), the statutes governing postrelease control, and our caselaw simply do not support the lead opinion's conclusion in this case.

{¶ 78} In order for the trial court to accept a guilty plea to a charge of possession of heroin in violation of R.C. 2925.11(A), the court must inform the defendant of "the maximum penalty involved" when a defendant is convicted of possession of heroin. The following exchange occurred at Bishop's plea hearing:

THE COURT: The charge you're pleading guilty to is classified as a felony of the fifth degree. With that classification, the maximum penalty in terms of incarceration is 12 months in prison. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: The maximum penalty in terms of a fine is $2,500. Do you understand that?

THE DEFENDANT: Yes.

(Capitalization sic.) The trial court informed Bishop of "the maximum penalty involved" for a possession-of-heroin offense.

{¶ 79} I would hold that the trial court complied with Crim.R. 11(C)(2)(a) by notifying Bishop of "the maximum penalty involved" for his possession-of-heroin offense. Crim.R. 11(C)(2)(a) did not require that the court inform Bishop of its discretionary authority under R.C. 2929.141(A) to sentence him to a consecutive term of incarceration for violating the terms of the postrelease control that was imposed as a part of his prior felony conviction.

### III. When does the trial court need to inform a defendant of its R.C. 2929.141(A) discretionary authority?

{¶ 80} One potential criticism of determining that the term "the maximum penalty involved" used in Crim.R. 11(C)(2)(a) does not include the potential penalty that may be imposed by the trial court under R.C. 2929.141(A) is that the defendant may not be made aware of such possible consequence. This criticism, however, is speculative.

{¶ 81} This court has previously held, applying the plain language of R.C. 2929.19(B)(2)(e), that "the statute does not require that a trial court notify an offender at his initial sentencing hearing of the penalty provisions contained in R.C. 2929.141(A)(1) and (2) (provisions that apply only when an offender is convicted of committing a new felony while serving a period of postrelease control)." *State v. Gordon*, 153 Ohio St.3d 601, 2018-Ohio-1975, 109 N.E.3d 1201, ¶ 2; *see also State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, 85 N.E.3d 700, ¶ 19 (holding that a trial court need not identify in a sentencing entry the judicial sanctions that may be imposed for violating the terms of postrelease control).

{¶ 82} In this case, Bishop asserts that his plea was not knowingly, intelligently, and voluntarily made because the trial court did not advise him of its discretionary authority under R.C. 2929.141(A) to revoke his existing postrelease control and impose a consecutive prison term for violating the terms of his postrelease control. Bishop argues that Crim.R. 11(C)(2)(a) requires that advisement as a part of "the maximum penalty involved" and that the trial court's failure to follow Crim.R. 11 violated his federal due-process rights. As explained above, Crim.R. 11(C)(2)(a) does not require such an advisement; therefore, the trial court did not violate Bishop's due-process rights when it did not advise him of its R.C. 2929.141(A) authority.

{¶ 83} The parties did *not* raise on appeal whether any statute, constitutional guarantee, or rule other than Crim.R. 11(C)(2)(a) independently requires that a

defendant pleading guilty to a felony be informed at his or her initial sentencing hearing or in the sentencing entry in which the trial court imposes his or her postrelease control of the trial court's ability to later revoke that postrelease control and impose a consecutive prison term when the defendant is convicted of or pleads guilty to a new felony offense. Nor did the parties raise whether any other rule, statute, or constitutional guarantee requires that the defendant be provided such information at any other time.

{¶ 84} A defendant is not foreclosed from raising other arguments— statutory, rule-based, or constitutional—to attack the validity of a judicial sanction imposed pursuant to R.C. 2929.141(A) when that defendant feels that the information provided prior to the judicial sanction being imposed was insufficient. In my opinion, however, a defendant cannot successfully base such a challenge on the language of Crim.R. 11(C)(2)(a), which is the only issue at bar.

## IV. The new requirement proposed by the lead opinion under Crim.R. 11(C)(2)(a) would place an unreasonable burden on trial courts

{¶ 85} The new requirement proposed by the lead opinion under Crim.R. 11(C)(2)(a) would place an unreasonable burden on trial courts in many cases. I foresee multiple problems that this requirement would create for trial courts attempting to comply with Crim.R. 11(C)(2)(a), and this new requirement might allow certain defendants to abuse the system.

{¶ 86} As a result of the new requirement proposed in the lead opinion, if a trial court failed to inform a defendant of a potential and speculative judicial sanction, the defendant's guilty plea would not be valid. The lead opinion does not include an explanation of what would happen when the court is not aware of the defendant's existing postrelease control. In many cases, the judicial sanction will not be imposed by the judge that sentenced the defendant to postrelease control in that defendant's prior felony case; indeed, the prior felony conviction may not even have been entered in the same jurisdiction. *See State v. Hicks*, 5th Dist. Delaware

No. 09CAA090088, 2010-Ohio-2985, ¶ 9; *State v. Dixon*, 5th Dist. Stark No. 2008CA00254, 2009-Ohio-3137, ¶ 20.

**{¶ 87}** Moreover, as noted above, pursuant to R.C. 2929.141(A)(1), the trial court may "impose a prison term for the post-release control violation" that "shall be the greater of twelve months or the period of post-release control for the earlier felony minus any time the person has spent under the post-release control for the earlier felony." Thus, to comply with the requirement proposed in the lead opinion, the trial court would need to inform the defendant of the maximum penalty involved, but the trial court would have to know not only that the defendant was serving a period of postrelease control but also know the details of the underlying felony conviction and of the defendant's existing postrelease-control term.

**{¶ 88}** This would place an unreasonable burden on the trial court to be aware of every defendant's existing postrelease control. The trial court is often not made aware of the defendant's existing postrelease control and prior felony convictions until after the plea hearing through a presentence-investigation report. *See* R.C. 2951.03; Crim.R. 32.2. Would trial courts now be required to do their own investigation prior to a guilty plea? Would prosecuting attorneys now be required to provide the trial court with the defendant's rap sheet prior to the plea? Or would it be the defendant's burden to provide such information, as the defendant is likely the only individual to know whether or not he or she is on postrelease control? If it would be the defendant's burden to inform the trial court, then any error by the trial court would have been invited by the defendant. And what would happen if a defendant pleaded guilty at arraignment? Would trial courts be required to delay such a plea in order to conduct such an investigation?

**{¶ 89}** Further, the practical reality of the position taken by the lead opinion is that it might allow for the potential abuse of our plea system. When a defendant, who is likely in the best position to inform the trial court that he or she is serving a period of postrelease control, fails to provide that information to the trial court, the

court will not provide notice of "the maximum penalty involved." Moreover, if the defendant waives a presentence-investigation report, *see* R.C. 2951.03(A)(1), then that court might not revoke the defendant's postrelease control at sentencing at all. The practical implication of this court adopting the lead opinion's conclusion would be that the defendant then could successfully argue that his plea was not knowingly, intelligently, and voluntarily made simply based on an error that the defendant had invited. And the defendant would not be required to show prejudice because "the trial court completely failed to inform [the defendant] that a consecutive prison sentence under R.C. 2929.141(A) was possible," lead opinion at ¶ 20, even though the lengthier sentence was not realistically possible because the trial court could not impose the lengthier sentence without having the information that the defendant withheld from the trial court. In that scenario, a defendant who had suffered no prejudice would get another bite at the apple simply because *that defendant* failed to provide to the trial court information related to the defendant's existing postrelease control.

{¶ 90} The conclusion of the lead opinion would likely place an unreasonable burden on the trial court and might provide defendants who are on postrelease control with the opportunity to abuse the plea system.

### V. Conclusion

{¶ 91} I would reverse the judgment of the Second District Court of Appeals and hold that pursuant to Crim.R. 11(C)(2)(a), a trial court does not need to advise a criminal defendant on postrelease control for a prior felony, during a plea hearing in a new felony case, of the trial court's ability under R.C. 2929.141(A) to terminate the defendant's existing postrelease control and impose a consecutive prison sentence for the postrelease-control violation. Therefore, I respectfully dissent.

BROWN, J., concurs in the foregoing opinion.

_____

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Michael J. Scarpelli and Andrew T. French, Assistant Prosecuting Attorneys, for appellant.

Carl Bryan, for appellee.

_____